STATE OF NEBRASKA, APPELLEE, V. DAVID L. RICE, APPELLANT.

335 N.W.2d 269

Filed June 3, 1983. No. 82-186.

William C. Cunningham, S.J., for appellant.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

HASTINGS, J.

The defendant brought this action under Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1979), the Post Conviction Act, to set aside and vacate his prior conviction and/or receive a new trial.

This appeal is the culmination of a long history of litigation. The conviction and sentence of David Rice for first degree murder was affirmed by this court in *State v. Rice*, 188 Neb. 728, 199 N.W.2d 480 (1972). The defendant obtained a writ of habeas corpus from the U.S. District Court in *Rice v. Wolff*, 388 F. Supp. 185 (D. Neb. 1974), *aff'd* 513 F.2d 1280 (8th Cir. 1975). On appeal, the U.S. Supreme Court reversed the granting of this writ at 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976).

The defendant filed a petition out of time for a writ of certiorari, which was denied. *Rice v. Nebraska*, 430 U.S. 947, 97 S. Ct. 1584, 51 L. Ed. 2d 795 (1977). The defendant unsuccessfully sought a second writ of habeas corpus in the U.S. District Court. *Rice v. Parratt*, CV78-L-133 (D. Neb. Feb. 14, 1979), *aff'd* 605 F.2d 1091 (8th Cir. 1979). Six of the counts listed in defendant's petition were dismissed for failure to exhaust available state court remedies. This led to the filing of the present action in the District Court for Douglas County, Nebraska.

The District Court found that the defendant raised four grounds which he claims constitute a denial of his constitutional rights, making the judgment against him void or voidable. First, the defendant claimed the State deliberately suppressed requested information material to the defendant's guilt or innocence, which may be exculpatory, that being the recording of a 911 call made by Duane Peak which lured Officer Larry Minard to the scene of his death in August of 1970. Second, it was claimed that a cooperation agreement between the FBI and the Omaha police division was concealed from the defendant. Third, he claims the State failed to disclose alleged promises of leniency or threats made

to Duane Peak inducing his testimony against the defendant. Finally, it is alleged, the State deliberately suppressed specifically requested information material to the issue of defendant's guilt, which may be exculpatory. This claim involves a letter sent by Duane Peak to Olivia Norris while Peak was in the Dodge County jail awaiting trial. The District Court found no merit to these claims by the defendant and denied defendant's motion to vacate and set aside the judgment. We affirm the decision of the District Court.

A brief statement of the facts will aid in the understanding of this case. On August 17, 1970, Officer Larry Minard was killed by a suitcase bomb at 2867 Ohio Street, Omaha, after being summoned there by a 911 emergency call reporting a woman was screaming for help at that address. Duane Peak, David Rice, and Ed Poindexter were arrested and charged with first degree murder as a result of their participation in this matter. Duane Peak, 16 years old, testified for the State, implicating Rice and Poindexter. Peak testified that it was he who placed the suitcase bomb at 2867 Ohio Street, and made out that he was simply following the instructions of David Rice and Ed Poindexter. On the basis of this testimony and other evidence adduced, Rice and Poindexter were convicted of first degree murder. Peak was thereafter tried as a juvenile and declared a juvenile delinquent. His whereabouts are unknown at this time.

Defendant has assigned several errors to the decision of the District Court. We turn now to these assignments. Defendant's initial assignment of error is in regard to the burden of proof in this matter. He claims the trial court erred in failing to recognize that in a post conviction hearing the State may be required to discharge the burden of coming forward with the evidence to rebut a prima facie case made by the petitioner.

As we have said: "The defendant has the burden

of establishing a basis for relief in a post conviction proceeding under Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1979), and the findings of the District Court in denying such relief will not be disturbed on appeal unless they are clearly erroneous." *Marteney v. State*, 210 Neb. 172, 177, 313 N.W.2d 449, 453 (1981).

Assuming arguendo that the burden of coming forward does in fact shift once the prima facie case is made, the burden of proving his case remains on the defendant. This being the proper standard of review and appropriate allocation of the burden of proof, we only need to determine if the District Court applied the appropriate rules of law in this case to findings of fact that are not clearly wrong. As will become apparent from our discussion of the remaining assignments of error, we concluded that it did.

The next several assignments of error deal with the standard of materiality applied by the District Court when determining if certain evidence should have been turned over to the defendant prior to or at trial. The defendant claims the District Court applied an incorrect standard of materiality in three separate instances. First, the defendant argues the trial court failed to distinguish between the standard of materiality in a case where the defendant attempts to discover certain evidence and in a case where the evidence in question bears directly on the credibility of a state witness. It is unclear from reading defendant's brief, but this argument seems to be directed to alleged promises of leniency and/or threats which induced Duane Peak to testify at the original trial, which were not disclosed to the jury.

As a general rule, when an accomplice testifies against a defendant in a criminal prosecution under threats or promises of leniency by the prosecutor, such promises or threats bear on the credibility of said witness. The credibility of such a witness is an important issue at trial. The existence of such an agreement, being relevant to credibility, must be

brought to the attention of the jury, and the failure to do so denies the defendant due process of law. *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *Campbell v. Reed*, 594 F.2d 4 (4th Cir. 1979); *United States v. Sutton*, 542 F.2d 1239 (4th Cir. 1976); *Boone v. Paderick*, 541 F.2d 447 (4th Cir. 1976).

It is likewise true that the defendant has the burden of proving the existence of such promises or threats, *Mastrian v. McManus*, 554 F.2d 813, 823 (8th Cir. 1977), as he does for all bases for relief in a post conviction hearing.

The record before us is devoid of any proof of the existence of such an agreement. Duane Peak, testifying at trial and in deposition, indicated he wished to testify because he felt things would go easier for him if he did. At the same time, Peak repeatedly denied any deal had been struck with the prosecution. Peak simply had an expectation of leniency, and, as such, absent evidence of any expressed or implied promise, it need not be revealed to the jury. *Mastrian v. McManus, supra.*

Peak's attorney, Thomas Carey, also testified. Carey's testimony gives rise to some inference that he may have possibly approached the prosecutor and offered to make some sort of deal for his client, but, again, he testified no deal was made prior to Peak giving testimony at trial.

Samuel Cooper, Donald Knowles, and Arthur O'Leary, the prosecuting attorneys in the original trial of David Rice, all testified at the post conviction hearing that no promises were made to Duane Peak in exchange for his testimony. On the basis of this evidence, or lack thereof, the District Court found that the defendant failed to adequately prove the existence of any such agreement. We cannot say such a finding is clearly erroneous. We therefore agree that the defendant failed to establish the existence of such a promise of leniency to induce Peak's testimony.

Since there is not adequate proof in the record to establish the existence of promises or threats made to Peak, the question of whether the District Court applied the proper standard of materiality to such matter becomes moot. Therefore, defendant's argument must fail.

Defendant makes a similar argument with regard to the tape of the 911 phone call which summoned Officer Minard to 2867 Ohio Street. Defendant argues that he has established a prima facie case that this was not the voice of Duane Peak. Therefore, the defendant argues that Peak perjured himself in testifying that he made that call. On this basis defendant argues that this matter goes again to the credibility of the witness and should have been brought out at trial. Since it was not, the defendant was denied due process. As such, it is argued, the District Court should have applied the standard of materiality from veracity or perjury cases as set forth in *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959), and *Giglio v. United States,* *supra*, rather than the standard from ordinary discovery cases as set forth in *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976).

This argument must also fail for lack of proof in the record. Defendant bases his argument on the testimony of David Herzog, who was counsel for Rice at the original trial. Herzog listened to a copy of the original tape of the 911 call on October 24, 1980. It was his opinion that the voice of the caller was not the voice of Duane Peak. Lt. James Perry also testified with regard to this tape. He testified that prior to the arrest of Duane Peak this tape recording was played for a number of Peak's friends and relatives who identified the speaker as Duane Peak. At trial, Peak testified that it was he who made the call and that when he made the call he spoke in a deeper than normal voice.

The District Court found the defendant failed to prove that it was not Duane Peak who made this

call.  As the District Court stated in its decision: "With all due respect for Mr. Herzog's considerable skill as a trial attorney, he hardly qualifies as an expert in voice analysis, particularly in view of the fact that, prior to his testimony, he had not heard the voice of Duane Peak, the alleged caller, in the approximately nine years since the defendant's trial."  The District Court, as the finder of fact, weighed this evidence and we cannot say it was clearly erroneous in its conclusion.  Therefore, we affirm the finding that there is insufficient evidence to support the claim that Duane Peak did not make the call, and thereby committed perjury in claiming that he did.  As such, the standard of materiality to be used in veracity or perjury cases, as set forth in *Napue v. Illinois, supra,* does not apply.

The question remains, Should this tape have nonetheless been turned over to the defendant at the original trial under the request made by the defense for discovery?  The defendant's motion for discovery prior to his trial read in relevant part as follows:  "COMES NOW the Defendant and requests the Court to Order the Prosecuting Attorney to permit this Defendant to inspect, copy or photograph:

"(1) The names, and addresses, of witnesses on whose evidence the charge is based;

"(2) The results and reports of physical or mental examinations, and of scientific tests or experiments made in connection with this particular case or copies thereof; and

"(3) Documents, papers, books, accounts, letters, photographs, objects or other tangible things of whatsoever kind or nature which could be used as evidence by the State."

There is no specific reference to this or any other tape recording in this request.  If the recording of the 911 telephone call is to be considered as an item falling within the scope of this request, it can only be said to fit within the general request of "objects or other tangible things."

The basic standard which determines whether evidence in the possession of the prosecution must be turned over to the defense is stated in *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963): "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

The U.S. Supreme Court expanded and clarified this notion in *United States v. Agurs, supra*. In *Agurs* the Court pointed out that the rule in *Brady* is applicable to three different situations. The first of these is the situation where the prosecution has used perjured testimony to prove its case, and the fact that such perjured testimony was used has been concealed from the defense. Such a conviction is fundamentally unfair and must be set aside if there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. *Id*. at 103. As pointed out above, the defense has failed to show the existence of any perjury in connection with this tape; therefore, this standard does not apply.

The second situation arises when the defense has made a specific request for evidence and the prosecution fails to turn such evidence over to the defense. This situation is exemplified by *Brady v. Maryland, supra*. When a specific request is made for evidence, a request that gives the prosecutor notice of exactly what the defense desires, and the prosecution fails to supply such evidence or submit the problem to the trial court, a new trial must be granted if such evidence might have affected the outcome of the trial. *Agurs* at 104. As pointed out above, the issue of this recording does not involve a specific request. The request made by the defense does not specifically request this tape, and therefore this standard does not apply.

The third situation arises when the defendant

makes a general request for evidence from the prosecution. In such a case the Court stated: "If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence in the hands of the prosecutor." *Id.* at 107.

Stating what is and is not "obviously exculpatory," the Court went on to say: "For a jury's appraisal of a case 'might' be affected by an improper or trivial consideration as well as by evidence giving rise to a legitimate doubt on the issue of guilt. If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice." *Id.* at 108-09.

Continuing, the Court said: "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.* at 109-10.

Further, "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Id.* at 112-13.

This third standard was the one applied by the District Court, and we find it is the proper standard to be applied in cases involving a general request

such as we have here. As pointed out above, the evidence in this case with regard to this tape shows that it was Duane Peak who made this call. We find, as did the District Court, that this tape recording is not so obviously exculpatory as to create a reasonable doubt about the defendant's guilt which did not otherwise exist. Therefore, the defendant is not entitled to any relief on the basis of the failure of the prosecutor to turn over a copy of this tape on the basis of defendant's request.

The final objection raised by the defendant, having to do with the standard of materiality applied by the District Court, deals with a letter written to Olivia Norris by Duane Peak while Peak was incarcerated in the Dodge County jail. Peak's letter is in part as follows: "The Lord knows I tried but something happened which forced me to realize that I had no alternative but to say what I said. No matter what anyone says from now on I refuse to call myself a man, or anything close to a man because I did what I did. Even though there was no other way, because they already had enough evidence to convict those other two bloods. I don't know, maybe I sound kind of nutty but that's just the way I feel. Or maybe I'm just trying to get somebody to say that what I did was justifiable, but I know It can't be justified. I not only turned against those two bloods, but I turned against myself and my own people. I could have denied everything and all three of us would have gone up to the chair. And then again if I denied everything one of those other bloods would have gave them a story and sent me and the other dude up. But neither one of those is the reason, I was scared a little but that's not the reason,? I guess I'll never know.? Now I have to wait until my actual trial before I find out whether I get the chair or life?"

The defendant claims that the District Court applied the incorrect standard of materiality when considering whether this evidence should have been

turned over to the defense by the prosecution. It is argued that this letter bears on the credibility of Duane Peak as a witness and, therefore, should have been turned over to the defendant under his above-quoted request if there was any reasonable likelihood that this letter would affect the judgment of the jury. The defendant argues that this letter could have been used to test the credibility of Peak as a witness, and thereby could reasonably have had an effect on the judgment of the jury.

In support of this argument defendant cites *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959), and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). A careful reading of *Napue* and *Giglio* indicates that they hold, "The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness." *Napue v. Illinois, supra* at 269. These cases do not hold, as defendant urges, that any evidence that might be useful to attack the credibility of a witness must be treated under this "could reasonably affect the judgment of the jury" standard of materiality. These cases speak only to the use of false evidence, whether it goes to the credibility of a witness or the guilt of the defendant. Neither this letter nor any other evidence in the record demonstrates that the testimony of Duane Peak at trial was false. As such, the standard of materiality urged by the defendant is inappropriate when considering this letter.

The District Court properly found that this letter fits within the second standard set forth in the *Agurs* case discussed above. As stated above, when a particular piece of evidence is specifically requested by the defendant, it must be turned over, and the failure to do so is prejudicial error if it might have affected the outcome of the trial. Applying this stand-

ard, the District Court found that while this letter indicates that Peak felt remorse in testifying against Rice and Poindexter, it does not cast doubt on the guilt of the defendant. Therefore, the court concluded the defendant was entitled to no relief for the failure of the prosecution to turn this letter over to the defense. We agree.

Defendant also argues that the trial court prevented the jury from knowing that one of the options considered by the State to be given in return for Peak's testimony was that he might be treated as a juvenile. Defendant argues that the jury should have been made aware of this possibility, as it could have influenced its estimate of Peak's credibility. This argument fails in its basic premise, i.e., the prosecution offered Peak something in return for his testimony. As pointed out above, the evidence in this case does not support such a contention. We find no merit to this argument.

Defendant also argues that the granting of the motion to quash defendant's subpoenas duces tecum was error by the District Court. The defendant had these subpoenas issued and served upon the local offices of the FBI and the Bureau of Alcohol, Tobacco, and Firearms of the Department of the Treasury, asking the local special agents in charge to appear in court with certain documents. The U.S. attorney opposed these subpoenas, and moved to have them quashed. The special agents appeared in court and testified that after having conveyed the demand for these materials to their respective superiors, permission to release said material was denied by those superiors. 27 C.F.R. § 71.27 (1982) and 28 C.F.R. § 16.22 (1982) preclude the local special agent in charge from producing any materials requested by subpoena without first gaining authorization from his superiors.

The U.S. Supreme Court, in *Touhy v. Ragen*, 340 U.S. 462, 71 S. Ct. 416, 95 L. Ed. 417 (1951), stated that in cases such as this, where authority to pro-

duce documents has been withheld, the refusal to produce such materials by the local agents is permissible. As such, the motion to quash defendant's subpoenas was properly sustained by the District Court.

Defendant's final assignment of error, raised by the questionable means of an untimely filed brief, is in regard to certain exhibits which were not admitted into evidence at the hearing below. Exhibits 32, 34-41, 43, 44, and 16 are copies of government documents provided to the defendant under the Freedom of Information Act. The District Court found these documents to be genuine and that they fall within the provisions of Neb. Rev. Stat. § 27-901 (Reissue 1979), since they were obtained from a public office. As such, these documents might well be admissible evidence under Neb. Rev. Stat. § 27-1005 (Reissue 1979) as the copies of official records. Under this provision a copy of an official record is admissible if it is certified as correct under Neb. Rev. Stat. § 27-902 (Reissue 1979), or if a person is called and testifies that after comparing the copy with the original, it is correct and accurate. The defendant failed to do this.

These documents do not qualify as self-authenticating documents under § 27-902. Also, no one was called to testify who could state that the documents offered were true and accurate copies of the originals. Since any such testimony fails to appear in the record, we find that the District Court's denial of the admission of these exhibits into evidence was proper.

We find none of the arguments raised by the defendant require the granting of the relief sought. We affirm the findings of the District Court denying defendant's motion to vacate and set aside his conviction.

AFFIRMED.