David Lewis RICE, Petitioner,

v.

Charles L. BLACK, Warden,
Respondent.

No. CV83–L–684.

United States District Court,
D. Nebraska.

April 16, 1986.
On Motion to Reconsider May 30, 1986.
On Motion to Quash Oct. 28, 1986.

David Lewis Rice, John Stevens Berry, Lincoln, Neb., for petitioner.

Robert M. Spire, Atty. Gen., Mel Kammerlchr, Asst. Atty. Gen., Lincoln, Neb., for respondent.

## MEMORANDUM AND ORDER

DAVID L. PIESTER, United States Magistrate.

The petitioner, an inmate at the Nebraska State Penitentiary, has submitted a sec-

ond amended petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. The respondent has answered and the relevant state court records have been filed. The petitioner has also moved the court for an opportunity to conduct discovery, to expand the record, and for an evidentiary hearing in this matter.

Rulings on these motions have been delayed by the withdrawal of petitioner's counsel, by an extended period during which petitioner sought to retain new counsel, and finally, by the appointment of counsel by this court. I am aware that the petitioner's Freedom of Information Act litigation pending in this court (CV80–L–89) has yielded the disclosure of more documents since the submission of these motions. Although the effect of such disclosure on petitioner's present requests is uncertain, I will address the requests, as well as issues of exhaustion and waiver, at this time in the interest of activating this long inert case and clarifying its scope.

The petitioner's habeas corpus action is his third brought in this court. After his conviction and sentence for his role in the slaying of an Omaha police officer, and unsuccessful direct appeal, the petitioner obtained a writ of habeas corpus from this court. However, the United States Supreme Court reversed the granting of the writ, *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Certiorari to the United States Supreme Court of the decision of the Nebraska Supreme Court on direct appeal was sought in an out-of-time application, but denied. *Rice v. Nebraska*, 430 U.S. 947, 97 S.Ct. 1584, 51 L.Ed.2d 795 (1977).

The petitioner then sought from this court a second writ of habeas corpus, which was dismissed without prejudice as to six of his claims for failure to exhaust available state court remedies. The petitioner next moved for post conviction relief in the state court. The denial of the motion was affirmed on appeal. The petitioner now presents this court with ten habeas claims which, upon examination, can be condensed to six:

1. The prosecution failed to disclose to the petitioner evidence of a "deal" granting a key state witness disposition as a juvenile in exchange for his testimony.

2. The prosecution failed to disclose to the petitioner a letter written by the state's key witness to a third party while in custody.

3. The prosecution failed to disclose to the petitioner a copy of the tape of the emergency 911 phone call, allegedly made by the state's key witness to lure the murder victim to the scene.

4. The prosecution failed to disclose to the petitioner the agreement for secret cooperation between federal and state law enforcement authorities to furnish investigatory leads and laboratory analysis, denying the petitioner the opportunity to confront his accusers.

5. The prosecution failed to disclose to the petitioner evidence of FBI surveillance of petitioner and of the political organization (Black Panthers) of which he was an officer.

6. Petitioner was denied equal protection by a selective and discriminatory prosecution based on his position in the Black Panther Party.

The remaining factual allegations relate to the petitioner's motion for evidentiary hearing.

## I.

### Exhaustion

■ Before these claims can be considered on the merits, I must find that each has been exhausted. 28 U.S.C. § 2254(b). Exhaustion is a concept of federal habeas corpus which requires the petitioner to present each of his claims first to the highest court of the state in which he was convicted before those claims may be considered in federal court, unless there is no present procedural method whereby the unpresented claims may yet be presented to the state's highest court. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). A federal habeas petitioner

satisfies the exhaustion requirement when he either has no other presently available state remedies to pursue or has fairly presented the substance of his federal claims to the state courts. *Moore v. Wyrick,* 668 F.2d 1007, 1009 (8th Cir.1982). The respondent in this matter contests the exhaustion of the petitioner's claims.

■ The respondent argues that the first claim has not been fairly presented to the Nebraska Supreme Court because the claim which was presented did not allege any agreement between the prosecution and Peak, but rather that the jury was prevented from knowing that one of the options considered by the state in return for Peak's testimony was the possibility that Peak would be treated as a juvenile offender. However, both the district court and the Nebraska Supreme Court considered this claim to be one alleging undisclosed prosecutorial promises in exchange for witness testimony. The district court found that such an agreement did not exist. The Nebraska Supreme Court expressly recognized that petitioner's claim "seems to be directed to alleged promises of leniency and/or threats which induced Duane Peak to testify at the original trial, which were not disclosed to the jury." *State v. Rice,* 214 Neb. 518, 522, 335 N.W.2d 269 (1983). Both courts considered the claim as one under federal due process standards. Because the state courts had the opportunity to address the substance of this federal constitutional claim, I find that this claim has been fairly presented and is exhausted.

■ The petitioner's claims two and three appear to be exhausted by virtue of their fair presentment to the Nebraska Supreme Court in the petitioner's post conviction appeal; the respondent does not contest the exhaustion of these claims.

■ The respondent does contest the exhaustion of claims four and five because they contain allegations which are different from those presented to the state courts, and because no evidence was admitted in support of the claims in state court to allow consideration of the constitutional merits.

Claim four in state court was unsupported by evidence due to the petitioner's failure to properly authenticate an offer of the proposed documents, and the claim was denied on that basis; the Nebraska Supreme Court addressed only the propriety of excluding the documentary evidence. The lack of evidence kept the state courts from considering the substance of claim four and for that reason it cannot be considered fairly presented.

However, the claim is still exhausted because there is no present procedural method whereby it may yet be presented to the Nebraska Supreme Court. 28 U.S.C. § 2254(c). The petitioner has already pursued relief by direct appeal and post conviction action. Any subsequent motion for post conviction relief must affirmatively show that the basis relied upon was not available at the time of the filing of the prior motion. *State v. Ohler,* 215 Neb. 401, 338 N.W.2d 776 (1983). This claim was not only available at the time of the post conviction action, but was partially presented in that action. Because it is apparent that the Nebraska Supreme Court would not entertain a second post conviction action based on this claim, I find this claim to be exhausted.

■ The same reasoning applies to claim five, which was not presented to the Nebraska Supreme Court, although it appears to have been available at the time of the post conviction motion based on allegations there of documentary evidence discovered in a Freedom of Information Act suit in 1976. No state court remedies are presently available as to this claim, and on that basis I find this claim to be exhausted.

The petitioner's sixth claim was one of the claims found unexhausted in the dismissal by this court of the petitioner's second habeas petition. The petitioner failed to raise this claim in the intervening post conviction action, although it was clearly available to him at that time. The claim has not been presented to the state courts, nor is there a presently available procedure for doing so. Therefore I find this claim to be exhausted.

## II.

### Waiver

■ When exhaustion is achieved without fair presentment to the state's highest court, as is the case with claims four, five, and six, the court has the further burden of determining whether the claims have thus been waived. *Engel v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). See, *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). In this case, where the petitioner has made use of both direct appeal and post conviction procedures for relief without giving the state courts an opportunity to rule upon federal constitutional grounds, the "cause" and "prejudice" standard of waiver applies. *Thomas v. Auger*, 738 F.2d 936 (8th Cir. 1984). That is, federal habeas review of these claims is precluded, absent a showing by the petitioner of cause for his failure to raise these claims previously and resulting prejudice.

■ The petitioner asserts that he has not waived these claims because they are based on newly discovered evidence. However, as I found in my discussion of exhaustion, these claims and the evidence proposed in support thereof were available to the petitioner at the time of his state court proceedings. He does not allege that any new evidence with regard to these claims was discovered subsequent to his post conviction action. The evidentiary problems which appear from the record of the post conviction action do not constitute cause. Even if they did, the petitioner has not alleged resulting prejudice, that is, that the production and admission into evidence of specific documents would have changed the result of the proceeding. Here, any such claim as to the evidentiary effect of the unspecified documents is merely speculative. Thus, I find that petitioner's claims four, five, and six are waived, and cannot be further considered in this habeas action.

## III.

### Motions

Discovery motions in federal habeas cases are governed by Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts, which provides that a party may invoke the processes of discovery, "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." In the absence of a showing of good cause for discovery, such motion is properly denied. *Smith v. United States*, 618 F.2d 507 (8th Cir.1980) (discovery properly denied where petitioner merely listed records sought without stating what he hoped to find therein or how they would help him prosecute his § 2255 motion).

The petitioner in this case has requested the discovery of "certain evidence" gathered from FBI records having to do with that organization's surveillance of the petitioner and his political group, as well as evidence still concealed from him by the state and federal governments, despite his attempts to reach it through discovery in the post conviction action. The motion specifies the need for discovery of any FBI Laboratory analysis of the tape of the 911 phone call, documents bearing on the terms of any agreement made with Peak in exchange for his testimony, and the production of Peak as a witness in order to ascertain the truth of his trial testimony as the state's key witness, and any reward for his appearance. The motion does not specify who should be charged with such production. The petitioner alleges that attachments to his motion (copies of excised federal documents) suggest the existence of the described material, and, presumably, are offered to demonstrate good cause for ordering the requested discovery.

The issues which remain viable (claims one, two, and three) all relate to the credibility of the state's key witness, Duane Peak. Consideration of this discovery motion will be confined to requests for material bearing on these claims.

■ With regard to the petitioner's specific request for documents regarding any prosecution agreement with Peak for his testimony, I do not find cause to allow such discovery. The district court in the post conviction order specifically found that no specific promise was made to Peak that any particular disposition more favorable to Peak than the first-degree murder charge then pending against him would be assured if he testified for the state. The court also found that the decision to prosecute Peak as a juvenile offender was not made by the county attorney until after the petitioner's trial. (Transcript at 136). Such state court findings are entitled to a presumption of correctness and are not open to review by the federal court in habeas unless the petitioner can establish one of the exceptions set out in § 2254(d). *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Thomas v. Lockhart*, 738 F.2d 304 (8th Cir.1984). The petitioner has not established any exception to the requirement of deference to state court factual determinations. He has not provided any further indication that such an agreement existed, nor has he demonstrated that the requested discovery would indeed uncover any documents to that effect. Thus, discovery as to such unspecified materials will be denied.

■ Nor may the petitioner, through discovery, obtain production of Duane Peak as a witness for the purpose of confronting him with newly discovered evidence, if any, to impeach his credibility. It appears from the district court's order on the post conviction motion that following Peak's adjudication as a juvenile offender he was ordered committed to the Boys' Training School at Kearney, Nebraska from which he was furloughed to an undisclosed location and subsequently discharged on July 1, 1974. (Transcript at 141). Additionally, the court noted that it appeared, although it was not established, that Peak was relocated and given a new identity at that time. (Transcript at 144). Aside from the lack of allegations as to what Peak would provide in the way of new evidence to support petitioner's habeas claims, *Smith v. United States, supra,* no information has been presented as to Peak's present location, in whose custody, if any, he resides, who should be ordered to "produce" him, or the identity of any person who has this information. Petitioner has not shown good cause for the discovery of the whereabouts of Peak, assuming that anyone knows, let alone for his production as a witness in this matter.

■ The petitioner also specifically requests discovery of material relating to the FBI laboratory analysis of the tape of the 911 phone call. Although the district court's finding that no laboratory or scientific tests were conducted on either the original reel-to-reel tape recording of the call to the 911 operator or on a copy thereof (Transcript at 136) is entitled to deference, *Sumner v. Mata, supra,* the petitioner has made a showing that such scientific tests were conducted and that the results thereof were not disclosed to the defense at trial. The exhibits attached to the petitioner's motion appear to be copies of excised federal documents obtained outside of this case. Exhibit K is a copy of a heavily excised document regarding a discussion between the FBI Laboratory and the Omaha FBI Office involving "the voice prints in this case." Exhibit N is a copy of a document stating that Peak had admitted in preliminary hearing testimony that he had made the taped 911 call. The document contains the suggestion by the deputy chief of police that "any use of tapes of this call might be prejudicial to the police murder trial against two accomplices (Rice and Poindexter)" and it therefore was advised that no use of the tape be made until after the murder trials had been completed. Exhibit P is a copy of a document indicating that the FBI Laboratory had possession of a copy of the 911 tape for examination, and subsequently returned it to Omaha at the request of the deputy chief of police.

While these exhibits are not evidence, and do not cause me to disagree with the findings of the state courts, together they demonstrate good cause for allowing dis-

covery in this matter. These documents support the inferences that the FBI did indeed perform scientific tests on a copy of the 911 tape, including a voice print of the telephone caller's voice,[1] which may have been damaging to the state's case against the petitioner; that the tape was subsequently ordered not to be used until after the murder trials were concluded; and that the deputy chief of police requested the return of the tape from the FBI Laboratory to prevent possible undesirable disclosure. The information requested by the petitioner would tend to prove or disprove the validity of such inferences and is relevant to the petitioner's claim that Peak did not make the call and that he perjured himself by testifying to the contrary. The nondisclosure of such information, assuming that the information is exculpatory and material to the petitioner's defense, would constitute a violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), warranting habeas relief. Discovery is warranted in this circumstance.

## IV.

### Effect of the FOIA Suit

■■■ That the evidence at issue was withheld from the petitioner pursuant to his FOIA request and litigation, and may indeed be statutorily exempt from disclosure under the Act, does not affect my conclusion that discovery as to the voice identification materials should be allowed. The only relationship between the petitioner's FOIA action and his habeas action is that documents obtained in the FOIA action have been used as the basis for showing cause to allow discovery in this habeas action.

Few cases regarding the relationship between FOIA disclosure and civil discovery procedures have directly addressed the issue here, that is, the extent to which a litigant in a civil case can obtain by discovery materials which would be exempt in

an action for disclosure under FOIA. None address the issue in the context of a habeas corpus proceeding. *See Frankel v. Securities Exchange Commission*, 460 F.2d 813 (2d Cir.), *cert. denied* 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972); *Pleasant Hill Bank v. United States*, 58 F.R.D. 97 (W.D.Mo.1973). *Accord, Verrazzano Trading Corp. v. United States*, 349 F.Supp. 1401 (Cust.Ct.1976).

In *Han v. Food & Nutrition Service of the U.S.D.A.*, 580 F.Supp. 1564 (D.N.J. 1984), an appeal of a government decision to withdraw authorization to participate in the food stamp program, the court addressed the issue of whether the plaintiff was entitled in the pending court action to the identification of individuals whose identities had been withheld in previous administrative proceedings under FOIA. The court allowed the discovery requested to oppose the defendant government's summary judgment motion, noting that the plaintiff sought disclosure, not in his capacity as a general citizen under FOIA, but as a litigant having particular rights of discovery under the Federal Rules of Civil Procedure. The court refused to allow the government to prevail on its motion by offensively employing a disclosure act to keep plaintiff unaware of the issues of material fact.

The petitioner's case presents a similar situation in that the very evidence necessary to prove unconstitutional conduct on the part of the government is in the hands of the government. Although the petitioner does not have the same broad right to discovery as do civil litigants in non-habeas cases, *Harris v. Nelson*, 394 U.S. 286, 295, 89 S.Ct. 1082, 1088, 22 L.Ed.2d 281 (1969), it is clear that the instant case is one within the contemplation of Rule 6 governing § 2254 procedures. The advisory committee note to that rule states: "But where specific allegations before the court show reason to believe that the petitioner may, if

---

**1.** A voiceprint, also called a sound spectrogram, is a graphic representation, produced by a sound spectrograph, of the frequency, intensity, duration, and variation with time of the resonance of a sound or series of sounds. The Random House College Dictionary, Revised Edition, 1980.

the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."

The petitioner has given me reason to believe that the information he seeks may support a meritorious habeas claim. However, as it stands, the petitioner's motion for discovery does not advise the court of the specifics of his intended discovery. Before granting leave to conduct discovery of any kind, I will require the petitioner to indicate the method of discovery he wishes to use, to whom the discovery will be directed, and by what date he anticipates discovery can be completed. This ruling should not be interpreted as carte blache authority to conduct discovery, nor as an indication of how the court might rule should claims of privilege be raised in opposition to specific discovery requests.

The pending FOIA case does not directly impact this action at the present time. However, should its eventual resolution provide the petitioner with additional evidentiary support for his habeas claims after this habeas action has been concluded (assuming the writ is not granted), the petitioner would be able to return yet another time to this court for habeas relief. *Walker v. Lockhart*, 726 F.2d 1238 8th Cir.), *cert. denied* 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984) (res judicata not applicable in habeas). I have considered, but rejected, the possibility of staying this habeas action pending the complete resolution of the FOIA litigation to allow the petitioner to present evidence supporting these claims all in the same proceeding. However, it does not appear in general to be the practice to stay a party's other civil litigation pending at the time of his FOIA action, even if the FOIA action involves documents useful to the party in his civil litigation. See e.g. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Hoover v. U.S. Dept. of the Interior*, 611 F.2d 1132 (5th Cir.1980); *Canadian Javelin, Ltd. v. Securities and Exchange Commission*, 501 F.Supp. 898 (D.D.C.1980). Most important, if any of the petitioner's claims proves to be meritorious, I do not wish to further delay whatever relief may be due the petitioner by staying this action.

As developments pursuant to my ruling on the discovery motion may affect the remaining motions for leave to expand the record and for an evidentiary hearing, both filing 13, I will reserve ruling on those motions.

IT THEREFORE IS ORDERED:

1. The petitioner's claims are exhausted, and claims four, five, and six are waived.

2. The petitioner is given until May 15, 1986 to file a specific discovery request, if petitioner still desires such discovery, in accordance with this memorandum.

3. A ruling on the motion to discover evidence is reserved pending a response by the petitioner within the specified time.

4. Ruling is also reserved on the motions to expand the record and for an evidentiary hearing pending the outcome of any discovery.

## ON MOTION TO RECONSIDER

The petitioner in this habeas action has submitted a response and objection to my order of April 15, 1986, and a request for specific discovery pursuant to that order. I will have the document filed and will consider it to the extent that it seeks reconsideration of my prior rulings and specific discovery.

My reconsideration of the aspects of the petitioner's claims detailed in his response lead me to the same conclusions set forth in my previous memorandum and order, although in one instance, for a different reason. The petitioner objected to my finding that no cause had been shown to allow discovery about a deal made between the state and its key witness, Duane Peak. The petitioner went on to demonstrate cause for allowing discovery as to an alleged deal between Peak and federal agents for the F.B.I. and/or the A.T.F.

While the argument has appeal, I decline to allow discovery on it at this time because it has not been previously raised in this habeas action, nor is it apparent that it has been exhausted as required by 28 U.S.C. sec. 2254. Although both claim one and the new claim are based on a "deal" between the government and Peak, the new claim goes far beyond the allegations of claim one, that Peak's deal was with prosecutors for disposition as a juvenile in exchange for testimony in the state prosecution. Although it is not clear from the petitioner's response what the terms of the newly alleged agreement might have been (indeed, the petitioner seeks discovery of that information), it appears to include Peak's cooperation as an informant in exchange for federal protection or compensation.

 Absent a showing that this claim has been fairly presented to the Nebraska Supreme Court, or, if no route is now available for such presentation, that there is cause for the failure to raise the issue in the state courts and resultant prejudice, this claim is not properly considered in this action. See, *Picard v. Conner*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Engle v. Isaacs*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Obviously this situation precludes the allowance of any discovery which might otherwise have been appropriate as to this claim.

The petitioner's request for discovery as to claim three, regarding the 911 phone call tape, will be granted to this extent: The petitioner will be allowed to depose the requested federal agencies, as non-parties, as provided in Fed.R.Civ.P. 30(b)(6). The depositions shall be by written questions as provided in Rule 31. Any objections to the depositions will be resolved prior to their scheduled taking. Scheduling for this discovery will be imposed by the court.

IT THEREFORE IS ORDERED:

1. The clerk shall file the petitioner's response as a motion to reconsider and request for discovery.

2. The petitioner's request for reconsideration of my prior rulings is granted. Upon reconsideration, my memorandum and order dated April 15, 1986 will stand, except as to discovery regarding claim one. That discovery is denied for the revised reason set forth in this memorandum.

3. Discovery by the petitioner as to claim three shall be by deposition pursuant to Rules 30(b)(6) and 31, Fed.R.Civ.P. Deposition questions, along with a copy of this order and a subpoena, shall be served upon each deponent not later than 20 days from the date of this order.

4. An objection to either the taking of the deposition or to specific questions asked shall be raised by the deponents not later than eleven days after service of the questions.

5. Depositions shall be completed not later than 40 days from the service of questions and subpoenas.

## ON MOTION TO QUASH

In my earlier Memorandum and Order, dated May 30, 1986, the petitioner was granted leave to depose the Federal Bureau of Investigation (FBI) and the Bureau of Alcohol, Tobacco, and Firearms (ATF). Pursuant to this order, the petitioner has served deposition subpoenas on Manuel Gonzalez and James Carlson of the ATF, and James Ahearn of the FBI. (Filings 33, 34, & 35). Deponent Ahearn, Special Agent in Charge of the FBI Field Office in Omaha, has now moved to quash the deposition subpoena served upon him on the basis that the information requested is (i) irrelevant, (ii) exempt from disclosure under 28 C.F.R. § 16.21 *et seq.*, (iii) exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552 (1979), and the Privacy Act, 5 U.S.C. § 552a (1984), and (iv) privileged. In addition, the deponent has filed an objection to five of the specific deposition questions served upon him for the same reasons. I reject each of these objections.

Under the rules governing § 2254 cases, Rule 6 provides that for good cause shown

the court may grant leave for discovery available under the Federal Rules of Civil Procedure. Rule 26(b)(1) of the Federal Rules of Civil Procedure limits the scope of discovery to non-privileged matters that are relevant to the subject matter of the pending action.

In the deposition questions served on Mr. Ahearn the petitioner seeks information concerning the chain of custody of the tape of the 911 phone call, the results of any analysis performed on the tape, and communications between the FBI, the ATF, and the Omaha Police Department concerning the tape. The five specific questions objected to by the deponent are as follows:

5. Who in the FBI first obtained custody of the tape?

7. What is the chain of custody from the time the FBI obtained possession of the tape until now?

23. Who made the decision to send the tape back to the Omaha Police Department? When was this decision made? Why was this decision made? What test results or other items were also sent to the Omaha Police Department?

24. What are the names, addresses, employment status and location of each of the persons identified in the answers?

25. Produce every document referred to in the answers to the questions.

### I.

The deponent, without any explanation, merely asserts that the information requested is not relevant. I earlier held that the petitioner has demonstrated good cause for allowing discovery of material relating to the FBI laboratory analysis of the tape of the 911 phone call. Any evidence obtained in this respect would clearly be relevant. As noted in my earlier Memorandum and Order, other documents received by the petitioner support the inferences that (i) the FBI performed scientific tests on a copy of the 911 tape, including a voice print of the caller's voice, which may have been damaging to the state's case against the petitioner, (ii) the tape was subsequently ordered not to be used until after the mur-

der trials were concluded, and (iii) the deputy chief of the Omaha Police Department requested the return of the tape from the FBI lab to prevent possible undesirable disclosure. The information requested by the petitioner would tend to prove or disprove the validity of these inferences, and in this manner be relevant to the petitioner's claim that Duane Peak, the state's main witness, did not make the call and therefore perjured himself when he testified to the contrary. The nondisclosure of such information, assuming it is exculpatory and material to the petitioner's defense, would constitute a violation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), entitling the petitioner to habeas relief.

### II.

Without any explanation, the deponent asserts that the requested information is not discoverable pursuant to 28 C.F.R. § 16.21 *et seq.* This regulation, promulgated by the Justice Department, is merely a guide for its own internal operations in dealing with disclosure requests made upon it in court proceedings. *See* § 16.21(c). This regulation in no way creates any substantive privilege from disclosure, and in no way binds this court as to the proper resolution of discovery matters in habeas corpus proceedings. It provides this court with no guidance on the proper resolution of the matter at hand, and therefore will not be discussed further.

### III.

The deponent next contends that the requested information is not subject to disclosure because it is exempted under the Privacy Act and the Freedom of Information Act (FOIA). At the outset, it must be noted that an agency cannot rely on an exemption under the Privacy Act if the material would otherwise be accessible under the FOIA. 5 U.S.C. § 552a(b)(2); *Brown v. FBI,* 658 F.2d 71, 74 (2d Cir. 1981); *Sears Roebuck & Co. v. GSA,* 553 F.2d 1378, 1383 (D.C.Cir.1977); *United States v. Brown,* 562 F.2d 1144, 1152 (9th

Cir.1977). Thus, because the Privacy Act adds nothing to the deponent's contentions, this claim must be determined solely on the basis of the exemptions under the FOIA.

As noted in my earlier Memorandum and Order, few cases have addressed the issue of whether a civil litigant may obtain by discovery materials that would be exempt in an action for disclosure under the FOIA. Further, no case has been found which addresses this issue in the context of a habeas corpus proceeding. *See Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336 (D.C.Cir.1984); *Frankel v. SEC,* 460 F.2d 813 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972); *Pleasant Hill Bank v. United States,* 58 F.R.D. 97 (W.D.Mo.1973); *Verrazzano Trading Co. v. United States,* 349 F.Supp. 1401 (Cust.Ct.1972).

Some courts, with little or no discussion, have held that FOIA exemptions are inapposite with respect to civil discovery, as the FOIA exemptions do not provide evidentiary privileges from discovery. *Kerr v. United States District Court,* 511 F.2d 192 (9th Cir.1975), *aff'd on other grounds,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Canal Authority v. Froehlke,* 81 F.R.D. 609 (M.D.Fla.1979). This is due to the inherent differences between the discovery process and an FOIA request. While the FOIA was enacted to ensure government accountability by informing the public generally, the discovery rules were promulgated to promote efficient and just adjudications between parties to a lawsuit. *See Friedman,* 738 F.2d at 1344. Whereas the FOIA exemptions apply without regard to the need of the particular party requesting the information, under the discovery rules the party's need is a critical factor in determining whether discovery is warranted. *Id.* The most widely adopted approach in this area is to use the relevant FOIA exemptions to construe the applicable evidentiary privileges that exist under Rule 501. It is to this analysis that I now turn.

## IV.

The deponent asserts that the information requested is not discoverable because it is privileged, without any real guidance as to what theory of privilege is being relied upon. Under Rule 501 of the Federal Rules of Evidence, the law of privilege is "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." The deponent apparently seeks to rely on the common law "official information privilege" which grants a qualified privilege to investigative materials gathered and used in connection with law enforcement. In construing this common law privilege, courts have treated Exemption 7 of the Freedom of Information Act as forming its outer boundaries. *See, e.g.,* Saltzburg, *Emerging Problems Under the Federal Rules of Evidence,* 1983 A.B.A. Sec. of Litigation 119. Exemption 7 exempts from disclosure

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority. in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

5 U.S.C. § 552(b)(7).

■ Once it is determined that the information sought is within the bounds of the exemption, the government's assertion of privilege is subject to a balancing test, with the government's need for confidentiality measured against the private litigant's need for the allegedly privileged information. *See, e.g., Friedman,* 738 F.2d

at 1344; Toran, *Information Disclosure in Civil Actions: The Freedom of Information Act and the Federal Discovery Rules,* 49 Geo.Wash.L.Rev. 843, 851–52 (1981). Although the enactment of the FOIA exemptions are entitled to some consideration in the balancing process, as indicative of the strength of the government's interest in nondisclosure, this factor is not to be given controlling weight. *But see ACLU v. Brown,* 609 F.2d 277 (7th Cir.1979) (treating FOIA exemption as "primary factor" in decision to prohibit disclosure). To do so would effectively nullify the private litigant's need for the requested material, and in the process distort the relevant rules concerning privilege and undermine the purpose of the discovery rules. *See* Toran, *supra* at 852–54.

The burden is upon a party claiming privilege to demonstrate the right to invoke its protections. *See Hollins v. Powell,* 773 F.2d 191, 196 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986). As noted, the deponent has made no showing to demonstrate that the sought information and materials are privileged in any way. He has thus failed to meet this burden.

The petitioner's FOIA suit concerning this matter, CV80–L–89, was dismissed without prejudice on September 2, 1986. Assuming, *arguendo,* that the information he seeks to discover is exempt from disclosure under the FOIA, it is nonetheless discoverable in this action, because the petitioner's need for the material is demonstrably stronger than the government's interest in nondisclosure. In fact, given the absence of any articulated reason for nondisclosure, it cannot even be seriously contended that the petitioner's interest in being released from an allegedly unconstitutional confinement is not greater than the government's interest in nondisclosure.[1]

The government has not alleged that disclosure of the information would endanger the life or physical safety of law enforcement personnel, but apparently is claiming that disclosure of the identity of the FBI personnel who worked with the 911 tape would constitute an unwarranted invasion of their personal privacy sufficient enough to outweigh the petitioner's need for the information. This contention is clearly without merit. The deponent has made no showing that would even tend to demonstrate that this disclosure would be any more intrusive or bothersome than the usual, routine burden which law enforcement personnel are expected to endure when they are called upon to testify at trial concerning their investigative work.

Further, there has been no contention or showing that the safety of Duane Peak would be at risk if the information requested were disclosed. It appears from the district court's order on the post conviction motion that Mr. Peak was relocated and given a new identity after being discharged as a juvenile offender. (Transcript at 144). There has been no allegation that the requested information would disclose the present identity or whereabouts of Mr. Peak.

As noted in my earlier Memorandum and Order, the present case is similar to *Han v. Food & Nutrition Service of the U.S.D.A.,* 580 F.Supp. 1564 (D.N.J.1984), where the court refused to allow the government to rely on FOIA exemptions to keep from the plaintiff the very evidence necessary to prove unconstitutional conduct on the part of the government. Although habeas petitioners do not have the same broad right to discovery as do other civil litigants, *Harris v. Nelson,* 394 U.S. 286, 295, 89 S.Ct. 1082, 1088, 22 L.Ed.2d 281 (1969), the present case clearly falls within the provisions of Rule 6. The advisory committee noted that

> where specific allegations before the court show reason to believe that the

---

1. *See Cumis Ins. Soc., Inc. v. South-Coast Bank,* 610 F.Supp. 193 (N.D.Ind.1985). That case involved a civil action arising from an alleged embezzlement. The court denied the U.S. Attorney's motion to quash a subpoena duces tecum requiring the production of FBI investigatory files concerning the embezzlement, given the U.S. Attorney's failure to give any specific reason as to why the documents were privileged or what was jeopardized by disclosure.

petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

The petitioner's need for the requested information, to demonstrate that he has been illegally confined, greatly outweighs any governmental interest in its nondisclosure, and the deponent has not demonstrated any willingness to provide the requested information in any alternative form. *Cf. Black v. Sheraton Corp. of America,* 50 F.R.D. 130 (D.D.C.1970) (necessity not shown where the government offered an alternative method of providing the requested information).

IT THEREFORE IS ORDERED THAT:

1. The deponent's motion to quash is hereby denied.

2. The deponent's objections to the deposition questions are hereby overruled.

3. The depositions previously postponed shall be completed within thirty (30) days.