David Lewis RICE, Appellant,

v.

Harold CLARKE, Warden, Appellee.

No. 90–1369.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1990.

Decided Jan. 14, 1991.

John Stevens Berry, Lincoln, Neb., for appellant.

Donald A. Kohtz, Lincoln, Neb., for appellee.

Before LAY, Chief Judge, and MAGILL, Circuit Judge, and LARSON,[*] Senior District Judge.

LAY, Chief Judge.

David Lewis Rice appeals from the district court's order denying his petition for a writ of habeas corpus. Rice was convicted in Nebraska state court of first degree murder in the 1970 bombing death of an Omaha police officer, Larry D. Minard, and was sentenced to life imprisonment. The Supreme Court of Nebraska affirmed his conviction. *State v. Rice,* 188 Neb. 728, 199 N.W.2d 480 (1972), *cert. denied,* 430 U.S. 947, 97 S.Ct. 1584, 51 L.Ed.2d 795 (1977).[1] Rice appeals the federal district

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The federal district court granted Rice's first petition for a writ of habeas corpus on the ground that his conviction was based on evidence obtained in an illegal search, but the Supreme Court reversed. *Rice v. Wolff,* 388 F.Supp. 185 (D.Neb.1974), *aff'd,* 513 F.2d 1280 (8th Cir.1975), *rev'd sub nom. Stone v. Powell,*

428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Rice's second petition for a writ of habeas corpus was dismissed by the federal district court because Rice had failed to exhaust state court remedies. *Rice v. Parratt,* CV78–L–133 (D.Neb. Feb. 14, 1979), *aff'd,* 605 F.2d 1091 (8th Cir.1979). Rice then was denied post-conviction relief by the Nebraska state district court and the Nebraska Supreme Court affirmed.

court's [2] denial of his latest petition for habeas corpus relief, alleging as grounds for reversal that (1) the prosecution failed to disclose evidence concerning a deal with Duane Peak, a key prosecution witness; (2) the prosecution withheld from him a copy of the tape of the emergency 911 phone call that lured the police to the site where Minard was killed; and (3) the prosecution failed to disclose a letter written by Duane Peak while in custody in which Peak expressed remorse about testifying against Rice and Poindexter. Rice now seeks discovery and an evidentiary hearing in the federal district court.

On August 17, 1970, an individual telephoned the Omaha police department to report that cries of help were coming from a vacant house located at 2867 Ohio Street. Several officers responded to the call, including Officer Larry Minard. Minard entered the vacant house and was killed when a suitcase containing a dynamite bomb exploded near the doorway. The police subsequently learned that Duane Peak, age 15, had placed the emergency phone call and had delivered the suitcase containing the bomb to the house.

Prior to the bombing incident, the police had received a tip that dynamite might be stored at Rice's house. Because the explosive device that killed Minard was constructed of dynamite, the police obtained a search warrant that authorized them to search Rice's house. A search of the house revealed blasting caps with wire, dynamite wrapper, orange grip pliers, a battery, and some dynamite.

Duane Peak, David Rice and Ed Poindexter were arrested and charged with first degree murder as a result of their participation in the bombing incident. Rice and Poindexter were convicted of first degree murder after Peak testified for the State that they had instructed him to place the suitcase with the bomb at the vacant house. At Rice's trial, Peak denied he had received any benefit from cooperating with the authorities. Peak was subsequently tried as a juvenile and declared a juvenile delinquent. His whereabouts are unknown at this time.

Tape of the 911 Phone Call

■ Rice argues he was denied due process and a fair trial because the prosecution failed to provide his counsel with a tape of the emergency 911 phone call. He contends it was not Peak's voice on the tape and that Peak's testimony therefore was perjurious. The basis of Rice's claim is a statement made by the then Omaha assistant chief of police, Glenn Gates, advising that no use be made of the tape of the call until after the murder trial of Peak, Rice and Poindexter because the tape might be prejudicial to the police in the murder trial.[3] Rice also asserts that his trial attorney opined in October, 1980 that it was not Peak's voice on the tape.[4] Rice claims the State deprived him of the opportunity to cast doubt on Peak's credibility by withholding the tape from his attorney. He also claims that the district court erred by not allowing him to conduct additional discovery as to whether the State had a voice print analysis of the tape. In addition, he contends the district court erred by not permitting him to make an evidentiary showing that the material facts surrounding the 911 call were not adequately developed at the state court hearing.

---

*State v. Rice,* 214 Neb. 518, 335 N.W.2d 269 (1983).

**2.** The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

**3.** The federal district court granted Rice's earlier motion to conduct discovery to ascertain whether the Federal Bureau of Investigation ("F.B.I.") performed a voice print analysis of the telephone caller's voice because of the statement by the assistant chief of police. The court reasoned that this statement "support[s] the infer-

ence … that the FBI did indeed perform scientific tests on a copy of the 911 tape, including a voice print of the telephone caller's voice, which may have been damaging to the state's case against the petitioner; that the tape was subsequently ordered not to be used until after the murder trials were concluded; and that the deputy chief of police requested the return of the tape from the FBI Laboratory to prevent possible undesirable disclosure." *Rice v. Black,* 112 F.R.D. 620, 626 (D.Neb.1986).

**4.** Rice's trial attorney had heard Peak testify for the State at the preliminary hearing.

This issue was raised in 1982 before a state district court, which found that Peak admitted he had made the emergency call, that Peak's brother identified Peak's voice on the tape, that based on Peak's admission and his brother's identification there was no reason to believe that anyone other than Peak had made the call, and that no voice print analysis was made on the recording of the call. *State v. Rice,* No. 81–116 (D.Neb. Jan. 24, 1982). The court also found that Rice failed to show that the tape recording would have created a reasonable doubt about his guilt had it been introduced at trial. *See United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). The federal district court found the state court's findings supported by the record. *See also Pittman v. Black,* 764 F.2d 545, 546 (8th Cir.1985). The federal court also denied Rice's motion to conduct additional discovery to determine whether the State had a voice print analysis of the 911 tape because Rice had failed to produce any information on this issue after the court granted his earlier motion to conduct discovery. In addition, the court denied Rice's motion to hold an evidentiary hearing to determine if it was Peak's voice on the tape. Peak admitted to making the call to the Omaha police department at a preliminary hearing and at trial, and Peak's brother, Donald Peak, informed two Omaha police officers that the voice on the 911 tape was that of Duane Peak. We find no error in the federal district court's rulings adopting the findings of the state district court.[5]

5. With respect to Rice's motion to conduct additional discovery, it is undisputed that the existence of the 911 tape was well documented in the police reports of the bombing incident. Moreover, the assistant deputy chief of police who made the statement that use of the tape might be prejudicial to the police murder trial is now deceased and Rice has offered no evidence that the F.B.I. did in fact have a voice print analysis of the 911 tape. Thus, we agree with the district court that it would be futile to allow Rice to engage in additional discovery of material relating to the 911 tape.

6. Peak's letter stated in part as follows:

**Exculpatory Letter**

Rice argues he was denied due process because the State failed to disclose prior to trial a letter written by Peak to a third-party that could have been used to impeach Peak's credibility. The letter indicated that Peak felt remorse about testifying against Rice and Poindexter.[6] The federal district court found there was no reasonable likelihood that the jury's judgment would have been different if the letter had been produced. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Under such circumstances, there exists no basis to assert prejudicial error. Counsel's projected speculation is not sufficient to demonstrate Peak perjured himself at trial.

**Peak's Prosecution**

Rice contends he was denied due process because the prosecution failed to disclose that Peak agreed to provide testimony at Rice's trial in exchange for prosecution as a juvenile. He also argues he should be allowed to conduct additional discovery and have an evidentiary hearing on this issue because the facts concerning "the deal" are presently unknown due to the disappearance of Peak. We disagree. The record is devoid of any evidence that the prosecution entered into a deal with Peak to obtain testimony against Rice. Moreover, Peak testified at Rice's trial that he never entered into a deal with the prosecution and the prosecutor denied that any bargain had been struck with Peak.

> The Lord knows I tried but something happened which forced me to realize that I had no alternative but to say what I said. No matter what anyone says from now on I refuse to call myself a man, or anything close to a man because I did what I did. Even though there was no other way, because they already had enough evidence to convict those other two bloods.... I not only turned against those two bloods, but I turned against myself and my own people. I could have denied everything and all three of us would have gone up to the chair. And then again if I denied everything one of those other bloods would have gave them a story and sent me and the other dude up.

The order of the district court denying the petition for a writ of habeas corpus is affirmed.