STATE OF NEBRASKA, APPELLEE, V. KENNETH TWEEDY, JR., APPELLANT.

400 N.W.2d 865

Filed February 13, 1987.   No. 86-509.

Leo J. Eskey, for appellant.

Robert M. Spire, Attorney General, and Susan M. Ugai, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

The defendant-appellant, Kenneth Tweedy, Jr., was convicted at a bench trial in the district court for Dodge County of one count of first degree assault and one count of using a firearm in the commission of a felony. He was sentenced to 2 to 4 years on each count, to run consecutively, for a total sentence of 4 to 8 years, with credit for 26 days served.

Tweedy urges this court to reverse on two grounds: first, that the defendant was denied a fair trial because the State failed to disclose exculpatory evidence; and, second, that the evidence was insufficient to support the judgment. The appellant also submits that the district court abused its discretion by failing to place him on probation. Having reviewed the record before us and finding no error, we affirm the judgment and sentence of the district court.

Around midnight on the morning of October 20, 1985, Jon Patocka drove his wife, Denise, and the defendant into Fremont, Nebraska, to borrow a spotlight to use while hunting raccoons. The two men had been drinking beer since the afternoon. While in Fremont they stopped to eat at a Burger King restaurant before driving past a Taco John's restaurant. Tweedy thought he recognized someone in the Taco John's parking lot, so the driver circled the block. Tweedy yelled at a group of people on three-wheeled, all-terrain cycles and then realized that he did not recognize anyone in the group of seven people on six cycles.

Brian Wiese was driving the cycle on which David Havranek, the victim, was a passenger. Wiese testified that, after the verbal

exchange, the cycle riders were "motioned" to follow the car. One cycle was on each side of the car, and the car driver and the cycle rider on the left spit food at one another. The car eventually forced the cycle on its left from the road. The cycle on the right, driven by Scott Brown, then passed the car. The Wiese-Havranek cycle was second in line behind Patocka's Monza when the car and cycles began their 60- to 70-mph journey through the streets of Fremont.

When Wiese and Havranek were approximately two blocks behind the car, Wiese heard shots and observed the defendant's head and shoulders out of the window of the car on the passenger side; he was holding the barrel of a rifle outside the window. Wiese was half a block behind the defendant when he observed Tweedy sitting on the car door, head and shoulders above the roof, holding the rifle in normal aiming position.

The lead cycle then pulled into a police station parking lot. The car kept going. The cycle in front of Wiese and Havranek did a 180° turn to head toward the police station. Wiese followed the car to read the license number. Wiese also turned, and when the Wiese-Havranek cycle was proceeding in the opposite direction from the car, David Havranek was shot. Havranek dismounted from the cycle and entered the police station.

Wiese testified that, after the shot, he again observed the defendant sitting on the car door in normal aiming position, and subsequently saw Tweedy move into the car. The victim, David Havranek, also testified that Tweedy fired several shots into the air and eventually aimed at Wiese and him, with the butt of the gun positioned on his shoulder.

Detective Sergeant Tellatin of the Fremont Police Department testified that he identified the defendant, using the car's license number, and took him into custody that morning. He read the defendant his *Miranda* rights and secured two statements. Tweedy admitted firing the gun several times, denied sitting on the window bracing himself, and stated that the gun accidentally discharged as he was climbing back into the car. This remained Tweedy's position throughout the trial. None of the State's witnesses at trial actually observed Tweedy at the very moment Havranek was shot; however, he was

observed just before and after the shot.

Tweedy alleges that he was denied a fair trial due to the prosecutor's failure to disclose the existence of a statement made by Eugene Foster, a bystander. No specific request for the statement appears in the record, although a general request for "[t]he names and addresses of witnesses on whose evidence the charge [was] based" was made in a motion for discovery, which was eventually granted by the district court and does appear in the record. The defendant makes no argument that the charge is based on Foster's statement, and, in fact, Foster stated he would be unable to recognize the defendant.

If the prosecutor had a duty to disclose Eugene Foster's statement to the defendant in response to the general request described above, " 'it must derive from the obviously exculpatory character of [the] evidence in the hands of the prosecutor.' " *State v. Rice*, 214 Neb. 518, 527, 335 N.W.2d 269, 275 (1983) (quoting *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)). In order to be a material omission, the omitted proposed evidence must create a reasonable doubt as to the defendant's guilt that did not otherwise exist. That the evidence "might" influence the outcome is insufficient. *Rice, supra.*

The statement given by Eugene Foster was first reviewed by counsel for the defendant after the trial was had and the judgment rendered, but before sentencing. The statement was found in the presentence report, and its appearance in that document is the only reference regarding Eugene Foster's statement contained in the record before us.

In the transcript of Detective Chamberlain's interview of Eugene Foster in the presentence report, Foster stated he saw a man get out with a rifle, brace himself on the roof of the car, and shoot. Foster was 1 to 2 feet away from Havranek at the time of the shot, and when asked if the man was aiming at the victim, Foster stated, "He was aimin' that way." Foster said the defendant also could have been aiming at him or his friend Darryn Greser, who also stood a few feet away from the victim.

At trial Greser testified that, in his opinion, the defendant was aiming the gun and that the gun had also been pointing in his direction. In the appellant's brief Tweedy argues that "[i]t is

possible that Eugene Foster would have made a similar clarification concerning the word 'aiming' as did Darryn Greser." He makes an improbable argument that this "clarification" would have presented two witnesses from which the trier of fact could conclude the shot was unintentional and that Tweedy was only pointing the gun in a general direction and not truly aiming.

It is our opinion that Foster's statement is not obviously exculpatory. The State was under no duty to disclose it to the defendant. Foster's statement contradicts the defendant's testimony that he never sat on the car window and braced the rifle on his shoulder and contradicts the defendant's story that the gun went off accidentally as he was climbing into the car. Whether considered pointing or aiming, the statement tends to prove, rather than disprove, intent by showing the defendant had control of the gun at the time of the shot. It is important to note that the trial court heard Greser's supposed "clarification" of aiming and still found the shooting intentional. Since the defendant's best hope is that Foster might possibly have testified as Greser did (although Greser and Foster stated the defendant aimed), the evidence would have been repetitive and cumulative. We conclude that the defendant was not prejudiced by the State's nondisclosure of Eugene Foster's statement. He received a fair trial. There is no error in this regard.

Tweedy next challenges the sufficiency of the evidence used to sustain the judgment. Specifically, he contends that there is no evidence regarding the defendant's intent at the moment his rifle discharged the shot injuring Havranek other than his own testimony that the shot was fired accidentally. In *State v. Palmer, ante* p. 282, 289, 399 N.W.2d 706, 714 (1986), we noted that

> in determining the sufficiency of the evidence to sustain a conviction in a criminal prosecution, it is not the province of the Nebraska Supreme Court to resolve conflicts in the evidence, pass upon the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence, as such matters are for the jury. The verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it.

When the sufficiency of the evidence as to criminal intent is questioned, "the law is settled that independent evidence of specific intent is not required. The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident." *State v. Thielen*, 216 Neb. 119, 125, 342 N.W.2d 186, 191 (1983).

Three witnesses testified that, just prior to the shot, the defendant was aiming the gun in the direction of the victim. According to Wiese, Tweedy was still in this same position seconds after the shot. Taking the view most favorable to the State, we conclude that the trier of fact was presented with sufficient evidence of the defendant's acts and of the circumstances surrounding the shooting to infer that the defendant acted intentionally.

The defendant's last assignment of error is that the district court abused its discretion by failing to place the defendant on probation. Whether to grant probation instead of a jail sentence is a matter left to the trial court's discretion. *State v. Kane, ante* p. 245, 397 N.W.2d 628 (1986). Absent an abuse of discretion, a sentence imposed within the statutory limits for the offense will be upheld on appeal. *State v. Gonzales, ante* p. 659, 399 N.W.2d 832 (1987).

Tweedy received two consecutive sentences of 2 to 4 years' imprisonment. The maximum penalty for each offense is 20 years in prison, a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1985). Although these are Tweedy's first felony convictions, we cannot help but note the seriousness of the offenses and the severity of the physical injury suffered by the victim. We note no abuse of discretion by the trial court. The judgment of the trial court is affirmed.

AFFIRMED.