STATE OF NEBRASKA, APPELLEE, V. LEO L. NEWSON, JR., APPELLANT.

415 N.W.2d 471

Filed November 20, 1987.   No. 87-128.

Thomas M. Kenney, Douglas County Public Defender, and Cathy K. Bashner, for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

CAPORALE, J.

Pursuant to the jury's verdicts, defendant, Leo L. Newson, Jr., was adjudged guilty of robbery in violation of Neb. Rev. Stat. § 28-324(1) (Reissue 1985) and of using a firearm to commit a felony in violation of Neb. Rev. Stat. § 28-1205(1) (Reissue 1985). He appeals and assigns as his sole error the trial court's determination that the evidence is sufficient to sustain

the jury's verdicts. We affirm.

On the afternoon of June 26, 1986, Anton Poggenpohl and his wife, Deborah, were at their vacuum cleaner retail sales store at 6065 Ames Avenue in Omaha. While Mr. Poggenpohl was talking on the telephone, he noticed a man walk into the store at about 3:45 p.m. and look at some vacuum cleaners. While both of the Poggenpohls glanced at the man, neither of them paid much attention to him, thinking he was a customer on whom Mr. Poggenpohl would wait as soon as he finished his telephone conversation. When Mr. Poggenpohl approached the man, the latter demanded money and pointed an object draped with an orange-red dish towel, which he held in his right hand, at Mr. Poggenpohl's stomach. At first, Mr. Poggenpohl thought the matter was a joke, but changed his mind after he reached out, touched the towel, saw a barrel, and realized the object in the man's hand was a gun. Because there was no cash register, Mr. Poggenpohl gave the robber $75 to $100 from his wallet. The robber then turned and left through the front door of the store. Both Mr. Poggenpohl and his wife, who had been watching the 30- to 45-second confrontation from behind the counter, went out the front door to see where the robber had gone, but he was not in sight. Mrs. Poggenpohl then called the police.

Defendant is 6 feet 2 inches tall and weighs 175 pounds. According to the police report, Mrs. Poggenpohl said the robber was 5 feet 9 inches tall and weighed 160 pounds; however, Mrs. Poggenpohl testified she told the police the robber was over 6 feet tall and that the report was incorrect in the description attributed to her. Mr. Poggenpohl told police the robber was 5 feet 11 inches tall and weighed 160 pounds. However, at the preliminary hearing Mr. Poggenpohl testified that the robber weighed 190 pounds. According to Mr. Poggenpohl, the robber wore faded jeans, a T-shirt, and tennis shoes.

On June 30, 1986, Police Officer James Reuting showed the Poggenpohls 48 photographs, which they viewed independently of each other. Mrs. Poggenpohl said she was "pretty sure" the photograph of the defendant depicted the man who had robbed them. Mr. Poggenpohl identified the

defendant from the same photograph, saying he was "about ninety percent sure" and "[t]hat's the one that looked a lot like the guy that robbed us."

On July 15, 1986, at approximately 11 p.m., Police Officer John Skanes had occasion to stop a vehicle near Phil's Foodway store at 30th Street and Ames Avenue in Omaha. He asked the driver for his operator's license, but the driver, who identified himself as Danny Robinson, could not produce one. A second officer arrived later, recognized the driver as the defendant, and informed Skanes that a felony warrant had been issued for defendant's arrest.

On July 16, 1986, the Poggenpohls viewed a lineup independently of each other, and each identified defendant as the man who had robbed them. During the course of the trial, each of the Poggenpohls again identified defendant as the robber.

Defendant called three witnesses at trial. The first of these, Cheryl Jones, testified that she saw the defendant in the early morning of June 26, 1986, because he had spent the night at her home, at 4301 Boyd Street. According to Jones, the pair left her home sometime around 12 noon and went to a body shop. They then left the body shop for the home of defendant's sister, Neona Newson, arriving there at approximately 1:45 p.m. They left Ms. Newson's home at approximately 2 p.m. for Phil's Foodway so that defendant could purchase a birthday card for his mother. Defendant then dropped Jones off at her home at approximately 2:30 p.m. Jones also testified that defendant had cashed a $475 check he had received as a settlement for a car accident 2 days earlier and that defendant told her he had money from an unemployment check he had previously received. According to her, defendant was wearing a white shirt, white pants, and red, white, and black tennis shoes on that day.

Ms. Newson testified that Jones and the defendant had arrived at her home on June 26 at approximately 2 p.m. and left 10 to 15 minutes later for Phil's Foodway so that defendant could buy a birthday card for their mother.

Defendant's mother, Verna Louise Swan, testified that defendant arrived at her home on June 26, 1986, at

approximately 3:25 or 3:30 p.m. and brought her $20, enclosed in a birthday card, and a carton of cigarettes. Defendant then went to a local store and brought back beer, some of which he and his mother shared. According to Swan, defendant left her home at 4 p.m. or later. She remembered the date because it was 1 week after her birthday. Swan confirmed Jones' description of the clothing defendant was wearing on the day of the robbery.

Defendant testified that after he left Jones at her home at approximately 2:20 p.m., he picked up three individuals and purchased beer, arriving then at his mother's home at 3:15 or 3:30 p.m. He left his mother's home at 3:50 or 4 p.m., and the four went to a park at 20th and Pinkney Streets where they drank and socialized with other friends. The defendant also testified that the reason he had given Officer Skanes a false name when he was stopped on July 15, 1986, was because he had been convicted for driving while intoxicated and was at that time driving on a suspended license.

This case is controlled by the well-settled rule that in determining the sufficiency of the evidence to sustain a criminal conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *State v. Charron, post* p. 871, 415 N.W.2d 474 (1987); *State v. Moore, ante* p. 347, 411 N.W.2d 345 (1987); *State v. Jacobs, ante* p. 184, 410 N.W.2d 468 (1987).

The testimony of the Poggenpohls more than adequately supports the jury's findings of guilt; the Poggenpohls separately and independently of each other identified defendant, both from photographs and from seeing him in a lineup, as the man who had robbed them. Each also identified him at trial. These identifications are not rendered unbelievable as a matter of law because of the discrepancies in the Poggenpohls' earlier descriptions.

AFFIRMED.