STATE OF NEBRASKA, APPELLEE, V. JOHN L. LEWIS, ALSO KNOWN AS RODNEY CRAIG FRAZIER, APPELLANT.

434 N.W.2d 528

Filed January 20, 1989.   No. 88-233.

Larry F. Fugit for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendant-appellant, John L. Lewis, also known as Rodney Craig Frazier, was convicted by a jury in the district court for Sarpy County of two counts of robbery, use of a deadly weapon to commit a felony, first degree false imprisonment, and burglary in connection with the robbery of an Albertson's grocery store in Bellevue on April 12, 1987. After a separate hearing, defendant was found to be a habitual criminal. He was sentenced to 15 to 30 years' imprisonment on each of the robbery, false imprisonment, and burglary counts. Those sentences were to run concurrently, but consecutively to any other sentences currently being served. Defendant was sentenced to not less than 10 nor more than 20 years on the weapons charge, to be served consecutively to all other sentences. He timely appealed, claiming that there was insufficient evidence of his identity to sustain his convictions and that the district court abused its discretion in imposing an excessive sentence. We affirm.

In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact. The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Wiggins, ante* p. 632, 432 N.W.2d 824 (1988).

Taking the view most favorable to the State, the record shows that Albertson's grocery store on Fort Crook Road in Bellevue was robbed at approximately 5 a.m. on Sunday, April 12, 1987. George Kubr, a night stocker for Albertson's, worked the 11 p.m. to 5 a.m. shift. At the end of his shift, Kubr went upstairs to check out. As Kubr descended the stairs, he encountered two men. Kubr said, "Hi," to the first man, who he testified looked like "one of the bakery people." The second man, later identified as Kenny Richardson, stopped Kubr on the landing and kept "ask[ing] how many people were in this store and where's the safe . . . ."

Richardson shoved Kubr back up the stairs. When Kubr got to the top of the stairs, he looked to his right and saw the same

man he had passed on the stairway. Kubr testified that "as soon as I looked at him he slapped me in the face and he said, 'Don't look at me.' " Kubr realized then that the man was not a bakery employee. When Kubr looked at the man a second time, the man hit him in the left side of the ribs with a torque wrench and forced him to crawl approximately 25 feet to the office area of the store. In the office area, the two men continued to ask Kubr where the safe was. They then took Kubr to a storage area and took $8 from his billfold.

Kubr told the men that the safe was located downstairs in the customer service area and that there was "only me and Jeff and one other guy and the cleaning guy and maybe a couple of bakery people" in the store. Kubr was forced to crawl back down the stairs. The men proceeded first to the bakery area. Two of the intruders then dragged Kubr to the frozen food aisle and eventually to the customer service area, where Kubr was told to lie down on the floor by the safe.

Albertson's produce department manager, Bill Baumann, arrived at work shortly before 5 on the morning of April 12. Baumann testified that he usually came in through the north door of the building and that he usually has to have someone let him in. On April 12, however, the north door was unlocked. Baumann noticed that the glass panes had been removed from the door and were leaning against the building.

Baumann pushed the door open and walked into the store to the front counter. At that point, he encountered Kenny Richardson, who forced Baumann to crawl through several areas of the store. Richardson then took Baumann's wallet and forced him to crawl to the safe. Baumann saw Kubr being dragged through the frozen food aisle by two other men, but did not see Kubr again until he reached the customer service area.

Both Kubr and Baumann were told to keep down and not look up. They heard a lot of "rattling" and "rummaging" in the customer service area. The noise continued for a few minutes. About 5 to 10 minutes after the noise stopped, Kubr asked Baumann if he was okay, peeked over the counter, and called "911." Kubr, Baumann, and a third employee then searched the store for other victims and found three employees bound and

gagged in a storage room.

The value of the merchandise missing after the robbery was approximately $14,000. Among the items stolen were an MSI 88D inventory control label scanner and a number of ABC Sports logo sunglasses.

On April 14, defendant and two other men were arrested as suspects in a series of robberies which had been committed in the Omaha area. Defendant consented to a search of his vehicle at the time of his Omaha arrest. The investigating officers found the MSI 88D inventory control label scanner in the trunk. On the same day, Omaha police officers obtained permission to search the residence where defendant had been staying as a guest. They discovered one pair of ABC Sports logo sunglasses in the room occupied by defendant, Richardson, and one James Williams. The Omaha police notified the Bellevue police and their efforts were thereafter coordinated.

Kubr had given physical descriptions of the intruders to the Bellevue Police Department. He testified that the first man he saw walking up the stairway looked like "Willie," the bakery employee, because his hair style was the same and "the forehead or the eyebrow area, was a lot like Willie." Kubr mistook the man for Willie in the dim lighting of the stairway. Although the lighting in the stairway was dim, there was a light on the landing and bright lighting in the break room. Kubr further testified that he observed the man from 3 to 4 feet away when the man slapped him at the top of the stairs.

During a lineup coordinated by the Omaha Police Division on Tuesday, April 14, 1987, Kubr identified the defendant as the man who slapped him and hit him with the torque wrench. Bellevue police Sgt. William Gumm was present during the lineup and testified Kubr was not hesitant in his identification of defendant. Kubr also identified defendant at trial and testified he was 100 percent sure he had identified the right man.

Sergeant Gumm further testified that he showed a photo lineup to Bill Baumann. Baumann was 100 percent sure that Kenny Richardson had been involved in the robbery, but only 50 percent sure that defendant had been involved. Baumann verified that defendant does look like Willie. He further

testified that defendant "looked real familiar" and looked like the man who was carrying the wrench during the robbery.

Defendant testified at trial that he was at home asleep at the time the robbery occurred and that Richardson had taken his car without permission. Richardson testified that he drove to Albertson's in defendant's car and that he, Danny Williams, and Michael Stanfield had committed the robbery. Richardson further testified that defendant looks like Danny Williams and that defendant was not involved in the Albertson's robbery.

Defendant does not contend on appeal that he was identified as the result of an improper lineup procedure. He only claims the record contains insufficient evidence of his identity to sustain his convictions. We disagree. Kubr positively identified defendant as one of the men involved in the robbery. Proceeds of the crime were found in the trunk of the defendant's car and in the room occupied by the defendant and Richardson, who had previously been convicted of robbery in connection with this incident. The jury resolved the conflicts in the evidence as to defendant's identity in favor of the State, and there is sufficient evidence in the record to support the convictions.

Defendant further claims the trial court abused its discretion in imposing an excessive sentence. Robbery is a Class II felony, punishable by a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment. Burglary and use of a deadly weapon to commit a felony are Class III felonies, punishable by a maximum of 20 years' imprisonment, a $25,000 fine, or both. First degree false imprisonment is a Class IV felony, punishable by a maximum of 5 years' imprisonment, a $10,000 fine, or both.

Defendant was found to be a habitual criminal, pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 1985). Section 29-2221 provides that one adjudged to be a habitual criminal shall be imprisoned for not less than 10 nor more than 60 years. Neb. Rev. Stat. § 28-1205 (Reissue 1985) provides that sentences imposed for use of a deadly weapon to commit a felony "shall be consecutive to any other sentence imposed."

A sentence imposed within the limits prescribed by statute will not be set aside as excessive absent an abuse of discretion on the part of the sentencing judge. *State v. Jones, ante* p. 528,

432 N.W.2d 523 (1988). We find no abuse of discretion.

The judgment of the district court is affirmed.

AFFIRMED.